COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-334-CR
NO. 2-02-335-CR
NO. 2-02-336-CR
NO. 2-02-337-CR
 
   
JORGE 
RIOS MORALES, JR.                                                   APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
 
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION 
 


 
------------
 
        Jorge 
Rios Morales appeals his conviction for three counts of aggravated assault with 
a deadly weapon and for unlawfully carrying a weapon on premises licensed for 
the sale of alcoholic beverages. We will affirm.
        Sixteen 
days into appellant’s community supervision for a criminal trespass conviction 
received after harassing hotel bar patrons, he was once again bothering 
customers at a bar in Arlington. Appellant was at the bar with a friend, and was 
already intoxicated by the time Clint Mobley arrived with three friends. 
Appellant recognized Mobley and offered to buy him a shot. One of Mobley’s 
friends later refused appellant’s offer to buy him a shot, thinking appellant 
was being loud and obnoxious.
        Appellant 
asked Mobley, “What’s his problem? Is he too good for me?” Mobley replied, 
“No. He just doesn’t know you.” “Well, f— him,” appellant responded, 
“I’ve got a gun. . . . I bet he won’t turn his back when I go get my 
gun.” Mobley laughed, “Well, all that means is you’re a punk with a 
gun,” and walked away.
        Mobley’s 
friends notified the bar manager that appellant was badgering them, and the 
manager escorted appellant out. Appellant left the bar, but called a friend from 
his cell phone in the car and said he did not like Mobley and his friends’ 
“attitude” and that he was going back to the bar to “fight them.” When 
appellant arrived back at the bar, the bar manager noted the “very determined 
look” on his face. One of Mobley’s friends asked appellant “what’s going 
on.” Appellant answered, “I’m going to take care of this and I’m going 
to tear their butt.” When asked, “What do you mean?” appellant lifted his 
shirt and showed him the gun tucked into his pants.
        One 
of Mobley’s friends and appellant’s friend nudged appellant towards the door 
and dissuaded him from starting any trouble. On the way to the door, appellant 
tapped Mobley on the shoulder and called him a “bitch.” When Mobley’s 
friend did not come back into the bar after a few minutes, Mobley headed out to 
check on him. Two of Mobley’s friends followed, concerned that there might be 
a fight.
        In 
the parking lot, appellant was trying to go back into the bar while his friend 
was restraining him and urging him to put the gun away. Mobley and his two 
friends were following to find out what was going on. A disinterested witness 
testified that the man closest to appellant was holding his hands up to show 
that he was unarmed, was not advancing towards appellant or making any 
threatening gestures, and appeared to be trying to talk things out with 
appellant. When the man closest to appellant was approximately fifteen to twenty 
feet from him, appellant cocked his weapon and shot him near the groin. The 
other two victims were taking a step back when appellant shot one in the knee 
and the other in the upper thigh.
        Appellant 
stood over one victim and declared, “I’m not a punk . . . now.” He then 
walked over to Mobley and put the gun to his head, taunting, “Who’s the punk 
now?” At that moment, the police arrived and arrested appellant. Appellant 
said, “I guess I showed them I’m not a pussy.” His friend remarked, “I 
can’t believe you shot those guys because they called you a pussy.”
        In 
his first two points, appellant contends that the evidence is legally and 
factually insufficient to support the jury’s rejection of his self-defense 
theory beyond a reasonable doubt. We address the legal sufficiency of the 
evidence to support the jury’s rejection of the self-defense claim by 
determining whether, after viewing all the evidence in the light most favorable 
to the prosecution, any rational trier of fact could have found the essential 
elements of aggravated assault beyond a reasonable doubt, and also could have 
found against appellant on the self-defense issue beyond a reasonable doubt. Saxton 
v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). In addressing the 
factual sufficiency challenge to the jury’s rejection of the self-defense 
claim, we review all the evidence in a neutral light and ask whether the 
State’s evidence taken alone is too weak to support the finding, and whether 
the proof of guilt, although adequate if taken alone, is against the great 
weight and preponderance of the evidence. Zuliani v. State, 97 S.W.3d 
589, 595 (Tex. Crim. App. 2003); Johnson v. State, 23 S.W.3d 1, 11 (Tex. 
Crim. App. 2000).
        Based 
on our review of the entire record, we conclude that a rational jury could have 
found beyond a reasonable doubt that appellant was seeking vengeance for 
perceived insults, rather than acting in self-defense, when he shot the victims. 
The evidence is sufficient to support the conviction, and the proof of 
appellant’s guilt is not against the great weight of the evidence. Zuliani, 
97 S.W.3d at 595; Saxton, 804 S.W.2d at 914. We overrule appellant’s 
first and second points.
        In 
appellant’s third point, he claims that the trial court erred in refusing to 
submit his requested jury instruction at punishment that community supervision 
may be revoked if a defendant violates the conditions of community supervision. 
Appellant contends that a major thrust of his defense was to attempt to secure 
community supervision, and that inclusion of appellant’s requested instruction 
would have reassured jury members that if they granted probation to appellant, 
and he subsequently violated the conditions, he would have been incarcerated. A 
trial court is not required to include information about the terms and 
conditions of community supervision in the jury charge. Cagle v. State, 
23 S.W.3d 590, 594-95 (Tex. App.—Fort Worth 2000, pet. ref’d) (op. on 
reh’g); Yarbrough v. State, 742 S.W.2d 62, 64 (Tex. App.—Dallas 
1987), pet. dism’d, improvidently granted, 779 S.W.2d 844 (Tex. Crim. 
App. 1989). The fact that community supervision might be revoked if one of its 
terms or conditions is violated is itself a term and condition of community 
supervision. We overrule appellant’s third point.
        Having 
overruled each of appellant’s points, we affirm the trial court’s judgment.
 
 
                                                                  JOHN 
CAYCE
                                                                  CHIEF 
JUSTICE

PANEL 
A:   CAYCE, C.J.; GARDNER, J.; and SAM J. DAY, J. 
(Retired, Sitting by Assignment).

DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: 
November 26, 2003